UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| GRACE L. M. E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:24-cv-00016-SEB-KMB |
| | ) |
| CAROLYN W. COLVIN,[2] | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Grace E. applied for supplemental security income ("SSI")[3] from the Social Security Administration ("SSA") on November 28, 2021, alleging an onset date of August 24, 2019. [Dkt. 8-2 at 18.] Administrative Law Judge Anne Shaughnessy (the "ALJ") issued a decision on August 9, 2023, concluding that Grace was not disabled and therefore not entitled to receive the requested benefits. [Dkt. 8-2 at 35-36.] The Appeals Council denied her request for review on November 28, 2023. [Dkt. 12 at 1.] On January 31, 2024, Grace timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin is substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[3] Disability benefits and supplemental security income claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this decision contains citations to those that apply to disability benefits.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion. For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE and REMAND** the Commissioner's decision.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations

2

omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

3

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[4]

Grace was 30 years old when she applied for SSI. [Dkt. 8-2 at 34.] She previously worked as a cashier and a stock clerk. [*Id.*]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Grace was not disabled. Specifically, the ALJ found as follows:

- At Step One, Grace has not engaged in substantial gainful activity since November 28, 2021, the alleged onset date. [*Id.* at 20.]

- At Step Two, Grace has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder. [*Id.*]

- At Step Three, Grace does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 22.]

- After Step Three but before Step Four, Grace has the RFC to "perform light work as defined in 20 CFR 416.967(b) except for the limitations that follow. [Grace] can understand, remember, and carry out simple instructions. She can have occasional interaction with coworkers and supervisors but cannot interact with the public. [Grace] can deal with changes in a routine work setting." [*Id.* at 25.]

- At Step Four, Grace is unable to perform any past relevant work. [*Id.* at 34.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Grace's age, education, and RFC, there were jobs that existed in the national economy that Grace could have performed through the date of the decision, including sorter, packer, folder, assembler, inspector, and hand trimmer. [*Id.* at 35.]

---

[4] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

4

### III.  DISCUSSION

Grace claims that the ALJ erred in three ways: (1) the ALJ relied on medical consultants' opinions despite new evidence (cervical and lumbar MRIs) that the ALJ independently interpreted; (2) the ALJ erred by failing to account for all of Grace's mental health issues, resulting in an unsupported RFC; and (3) the ALJ erred in her subjective symptom analysis by relying on Grace's activities and allegedly inconsistent statements to find her to be less limited than alleged.  The undersigned will address the issues as necessary to resolve the appeal, beginning with the first issue because the undersigned recommends that resolution of that issue is dispositive.

### A. The ALJ erred by analyzing new and potentially decisive medical evidence that had not been subjected to medical scrutiny.

There were several medical opinions the ALJ considered in evaluating Grace's RFC including two State Agency medical and psychological consultants, a psychological consultive examiner, and a physical consultive examiner.  [Dkt. 12 at 10.]  Grace argues that the ALJ did not articulate why these opinions are persuasive, aside from the ALJ's own lay opinion of the medical facts.  [*Id.* at 12.]  Grace notes that the only relevant imaging the consultants viewed were Grace's lumbar x-rays from June 2022 but that the medical record also contains MRIs of her cervical spine and lumbar spine in July 2022 that were not reviewed by any medical expert.  [*Id.*]  Grace contends that the ALJ improperly reviewed these MRIs without the aid of a medical expert and exceeded her expertise as a layperson by concluding that they did not provide any new information.  [Dkt. 12 at 13-14.]

The Commissioner contends that the ALJ sufficiently articulated and supported her assessment of Grace's RFC by describing medical and nonmedical evidence in accordance with SSR 96-8p.  [Dkt. 14 at 4.]  The Commissioner notes that the ALJ analyzed Grace's treatment history, imaging, "largely normal examination results," sporadic lower back treatment, lumbar x-

5

rays from June 2022, and lumbar and cervical MRIs from July 2022. [*Id.* at 5.] The Commissioner notes that summarizing the medical evidence in the written opinion is appropriate and not legal error. [*Id.* at 6.]

The Commissioner further argues that Grace accuses the ALJ of creating a "lay" interpretation but does not identify or define evidence "that would require it [to] be subject to an additional medical expert beyond the physician who interpreted the lumbar or cervical MRI or the medical professionals who made little to no alteration to Plaintiff's treatment . . . ." [*Id.*] The Commissioner notes Grace's "normal examination results" before the MRI and her "unremarkable examination" after the MRI, claiming that her providers did little afterward to alter her treatment plan. [Dkt. 14 at 9-10.]

As for Grace's argument that the lower back MRIs provided significant new evidence that no medical professional reviewed, the Commissioner contends that this argument fails for several reasons. First, the Commissioner argues that the "new" MRI was taken only a month after a lumbar x-ray that was reviewed by medical consultants. [*Id.* at 8.] Second, the Commissioner argues that Grace had "largely normal examination findings" and that the ALJ cited to specific records "both before and after the July 2022 MRI." [*Id.*] Third, the Commissioner states that Grace ignores the minimal treatment she received for her spine symptoms. [*Id.*] Finally, the Commissioner emphasizes that it is up to the ALJ, not the doctors, to assess a claimant's RFC. [*Id.*]

In reply, Grace claims that the ALJ committed a legal error by interpreting medical evidence without a medical opinion, which justifies remand "even if the Decision were otherwise supported by substantial evidence." [Dkt. 15 at 2-3.] According to Grace, "the ALJ impermissibly 'played doctor' by noting the significant imaging findings but finding they would

6

not alter the Light RFC[,]" which Grace contends requires remand.  [*Id.*]

The Seventh Circuit Court of Appeals has repeatedly held that an ALJ may not "play doctor" and "interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).  Specifically, MRI results are commonly found to be "new and potentially decisive medical evidence" that requires an expert opinion.[5]  *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (The ALJ "was not qualified to make his own determination without the benefit of an expert opinion" and "could have sought an updated medical opinion."); *McHenry*, 911 F.3d at 871 ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments."); *Goins*, 764 F.3d at 682 ("The [ALJ's] critical failure, however, was the failure to obtain a medical report on the results of the 2010 MRI.").  Potentially decisive evidence can be present even when the changes are only "minor" or "mild."  *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023) (citing *Israel v. Colvin*, 840 F.3d 432 (7th Cir. 2016)).

The same is true for medical evidence that is "replete with technical language that does not lend itself to summary conclusions" and should therefore be "reviewed by a physician to determine whether they are in fact consistent with [an individual's] claim of disability."  *Israel*, 840 F.3d at 440.  It is not error, however, for an ALJ to merely restate a physician's findings regarding the

---

[5] The undersigned acknowledges that, in certain circumstances, the Seventh Circuit Court of Appeals has upheld an ALJ's interpretation of medical results.  *See Olsen v. Colvin*, 551 Fed. App'x 868, 875 (7th Cir. 2014) (holding that it was not error for the ALJ to interpret MRI results without assistance from a medical expert when the ALJ "did not ignore relevant evidence and substitute her own judgment"); *DuCharme v. Kijakazi*, 2022 WL 3287974, at *2 (7th Cir. Aug. 11, 2022) (holding that it was not error for the ALJ to analyze medical records on his own).  However, given the new and potentially decisive nature of the medical evidence at issue in this case, the undersigned finds the present case to be more analogous to the *Akin*, *McHenry*, and *Goins* cases cited in this decision.

interpretation of a claimant's exams or procedures. *Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022) (holding that it was not error when "the ALJ did not attempt to interpret, on his own, the significance of any . . . medical tests or procedures" but rather "relied, as he should, on the conclusions of her treating physicians.").

The new evidence at issue here is Grace's July 2022 MRI of her lumbar spine and cervical spine. [Dkt. 8-7 at 77-81.] In assessing Grace's RFC, the ALJ analyzed medical records including that MRI. Specifically, in her analysis of the lumbar spine MRI, the ALJ stated it "revealed disc protrusions at L2-3 and L3-4 that impinged on the exiting right L2 and right L3 nerve roots, minimal right foraminal narrowing at L4-5 from a combination of disc disease, facet arthropathy, and retrolisthesis, and disc and facet disease at L5-S1 without stenosis." [Dkt. 8-2 at 27-28.] The ALJ stated that the cervical spine MRI showed "'small' disc protrusion at C4-5, C5-6, and C6-7 without stenosis or cord compression." [Dkt. 8-2 at 21 (citing 8-7 at 4-5), 28 (citing same).] The ALJ then cited numerous instances of Grace "den[ying] back or neck pain," having normal or unremarkable exams and appointments, and noting normal sensation. [*See, e.g.*, dkt. 8-2 at 28 ("Her examination notes were unremarkable."), 31 ("often denied back pain . . . to providers.").] The ALJ also incorporated the MRIs in her analysis, specifically stating that "[w]hile imaging has shown some impingement of the exiting right L2 and L3 nerve roots and minimal right foraminal narrowing at L4-5, the claimant has often demonstrated normal gait, strength, sensation, and/or coordination." [Dkt. 8-2 at 31 (citing dkt. 8-7 at 78).]

The undersigned agrees with Grace that the ALJ impermissibly interpreted new and potentially decisive medical evidence that should have been subjected to medical scrutiny to determine whether it has an impact on Grace's limitations. It is well-known that an ALJ may not

interpret an MRI that has not been reviewed by a medical expert, as the Seventh Circuit Court of Appeals clearly stated in *Akin v. Berryhill*:

> [W]ithout an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment. *See* [*Goins*, 764 F.3d at 680]; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion. The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion. *See Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).

887 F.3d 314, 317-18 (7th Cir. 2018).

In this case, the ALJ concluded that there was nothing in the MRIs that "provide[d] any new or material information that would alter any findings" regarding Grace's RFC. [Dkt. 8-2 at 32-33.] But this was not the ALJ's call to make, and there is no evidence in the record that any medical professional viewed and interpreted the MRIs in question as they related to Grace's limitations. The MRI results may corroborate Grace's complaints "or they may lend support to the ALJ's original interpretation," but the ALJ was not qualified to make that determination. *Akin*, 887 F.3d at 317-18.

The Commissioner cites to *Bakke* and *Baptist* as examples where the ALJ was not required to have an additional medical expert examine MRIs, but these cases are distinguishable. In *Bakke*, the Seventh Circuit Court of Appeals concluded that an ALJ could rely on the opinions of state agency physicians even where they had not reviewed an intervening CT myelogram. *Bakke v. Kijakazi*, 62 F.4th 1061 (7th Cir. 2023). In that case, the record evidence showed that two of the claimant's physicians reviewed the results of the scan and personally spoke with the claimant about them. *Id.* at 1067. "Neither found it concerning or noted a significant impact" on the claimant's residual capacity, both physicians going as far as to assure the claimant there was "nothing serious going on." *Id.* The court held that "[t]hese mild reactions show that the CT myelogram was not a

9

new, significant medical diagnosis that reasonably could have changed the reviewing physician's opinion." *Id.* (cleaned up).  Similarly, in *Baptist*, the record evidence showed that two physicians reviewed the claimant's new MRI and its impact on any functional limitations. *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023).  "Neither recorded any concerns[,]" and they noted that the claimant had full strength, normal gait, and no apparent weakness. *Id.*  *Baptist* concluded that "[w]hen evidence of mild changes is *reviewed by a claimant's treating physicians* and unaccompanied by any new symptoms, limitations, or treatment recommendations, we cannot say that it changed the picture so much that ALJ was required to seek an updated opinion to account for it." *Id*. (emphasis added).

The key difference between Grace's case and the cases cited by the Commissioner is that in Grace's case, there is no evidence in the record that a physician interpreted the MRI reports as they related to Grace's limitations or disability or discussed the results with her.[6]  The Commissioner argues that Grace does not identify what evidence would require "an additional medical expert beyond the physician who interpreted the lumbar or cervical MRI," [dkt. 14 at 9], but binding case law is clear that this "interpretation" of the MRI reports is insufficient on its own to support an ALJ's application to a decision of claimant's limitations.  The MRI report is "replete with technical language that does not lend itself to summary conclusions" and, therefore, had to be "reviewed by a physician to determine whether they are in fact consistent with [an individual's] claim of disability." *Israel*, 840 F.3d at 440.  Therefore, because there was no medical opinion on the record concerning the MRI in relation to Grace's limitations, the undersigned cannot say that

---

[6] It is clear from the record that no state agency provider reviewed this MRI because it occurred on July 11, 2022, which is the same day the "Recon level" report was completed and that references the last medical evidence being from June 20, 2022. [Dkt. 8-3 at 13, 20; dkt. 8-7 at 1, 4.]  Grace's primary care provider ordered the MRI on July 8, 2022, [dkt. 8-9 at 51], but the MRI results are not mentioned in the records at any of the follow up appointments. [Dkt. 8-9 at 32-41.]

the results did not "change the picture" because there is no interpretation of the result. Here, the ALJ was required to obtain a medical report on the results of the MRI, regardless of whether such a report would have ultimately supported the ALJ's interpretation or not.

The Commissioner's argument that the MRIs were taken only a month after a lumbar x-ray of a similar body area and, thus, were not "new" evidence is unconvincing. X-rays and MRIs are different medical tests that observe different internal structures. *See Brentwood Pain & Rehabilitation Servs., P.C. v. Allstate Ins. Co.*, 508 F.Supp.2d 278, 282 (S.D.N.Y. 2007) (noting that X-rays are used to produce images of bones, as well as some organs and other soft issues, but that MRIs are "preferred when soft-tissue contrast resolution is important") (internal cites omitted). The Commissioner's arguments that Grace received little treatment for her spine symptoms and that ALJs, not doctors, assess a claimant's RFC do not cure this issue. Regardless of the other evidence that supported the ALJ's determination of Grace's RFC, the fact remains that the ALJ was not permitted to interpret new medical evidence without medical support in formulating Grace's RFC.

Finally, the undersigned notes that "largely normal" examinations and "denial" of pain in the review of systems portion of a physician's note sometimes require a deeper dive into the record to determine whether a claimant has chronic pain. Specifically, some courts have noted the unreliability of symptom analysis using the "Review of Systems" ("ROS") portion of a medical record. *See e.g.*, *Groeteka v. Berryhill*, 2018 WL 1071719, at *3 (S.D. Ill. 2018) ("Plaintiff did see Dr. Knolhoff the next day and the doctor noted 'no back pain' in the 'review of systems' portion of his notes. Still, in the 'active problems' portion of his notes, he noted lumbar stenosis with neurogic claudiation."). Here, Grace's primary care provider case notes stated that she was a "30 year old female [who] presents with complaints of low back pain and neck pain." [Dkt. 8-9 at 49.] But a

11

few lines later in the ROS Section the note reads: "Musculoskeletal: DENIES: Back pain . . .". [*Id.*] Thus, within the same note, the doctor stated that Grace presented with back pain but also stated that Grace denied back pain.

In conclusion, for the reasons stated herein, the undersigned recommends reversal of the ALJ's decision. In developing Grace's RFC, the ALJ impermissibly interpreted the results of MRIs without assistance from any medical professional and with no record evidence of any physician's review with the claimant. Binding precedent requires remand when a mistake of that nature is made.

### B.     Other issues

Because the undersigned recommends remand on the grounds set forth above, she will not address Grace's other arguments in depth. Grace may raise her other concerns on remand if she deems it appropriate to do so.

### IV.  CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE AND REMAND** the Commissioner's decision finding that Grace was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

So RECOMMENDED.

Date: 12/30/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

12

Distribution

All ECF-registered counsel of record via email